# Jackson's Appeal.

1. A judgment in foreign attachment, being obtained without actual notice to the debtor, the debt is not conclusively established.

2. In foreign attachment, the plaintiff's whole claim against the fund in the hands of the garnishee, may be defeated by entering bail to the action.

3. In foreign attachment, bail may be entered by the garnishee at any time before satisfaction acknowledged, or even by a fourth person who may be interested as assignee of the debt owing by the garnishee to the defendant.

4. A recovery by a plaintiff against a bank, as a garnishee of the defendant, a depositor creditor of the bank, does not give the plaintiff the rights of a depositor to claim under an assignment by the bank, for the benefit of "persons to whom the bank was indebted as a depositor."

APPEAL by Washington Jackson from the decree of the Court of Common Pleas of *Philadelphia*.

Jackson, Riddle & Co., obtained judgment against Warwick & Claggett for a large amount, and by foreign attachment attached moneys deposited by Warwick in the Bank of the United States, and upon *scire facias* obtained judgment against the bank as garnishee of Warwick.

The attachment was served in 1837, the *scire facias* issued October, 1838, and the interrogatories were filed in 1845.

[Jackson's Appeal.]

The debits of the bank to Warwick were made up by deposits made by him in his own name, with the Bank of the United States, commencing in November, 1838, and terminating in 1840. The credit side of the account was composed of three classes of items, as follows:—

Two bills, drawn by Warwick on Claggett, in London, discounted or purchased by the bank, November 19 and 20, 1838, for $24,333.33.

Six bills, drawn by Warwick on Rogers & Co., of New York, three of which were discounted February 18, and three on May 28, 1839, for $69,425.

Deposits of cash, amounting to $13,196.47.

The moneys in the bank belonged to persons for whom Warwick was agent, and were placed there in the course of his business as such agent, and were drawn out and paid to him by the bank on the checks of Warwick, and the account nearly balanced pending the attachment; and the garnishee set up, on the trial of the *scire facias*, that the funds were not the property of Warwick but the property of his principals; but the defence did not avail them, although they had paid out the money.

On the 7th day of June, 1841, the bank made an assignment, and preferred those "persons to whom the bank was indebted as *depositors* in the said bank." And the question here is, were Jackson, Riddle & Co. depositors, or had they the rights of depositors under that clause of the assignment? which question the Court of Common Pleas decided in the negative, from which this appeal is taken, and the same assigned as error.

*Waln*, for plaintiff in error.

————, for defendant in error.

The opinion of the court was delivered March 16, 1854, by

LEWIS, J.—The question for decision is, whether Jackson, Riddle & Co., by virtue of their judgment and proceedings in foreign attachment against Warwick & Claggett, defendants, and the Bank of the United States, garnishee, are to be regarded as "persons to whom the bank was indebted as *depositors* in the said bank," on the 7th June, 1841, within the meaning of the assignment executed by the bank on that day. The legal effect of the judgment recovered by Jackson, Riddle & Co., against the bank, as garnishee of Warwick, is not to be disputed here. That judgment created the relation of debtor and creditor between the parties. But that relation was created by the *judgment* and not by contract. It is, therefore, subject to the modification prescribed in cases of judgments against garnishees in foreign attachments. The plaintiff therein does not stand

upon the footing of an ordinary judgment-creditor.   His debt is not conclusively established by his judgment, because it was obtained without actual notice to his debtor.   By the custom of London, from which our usage is in a great measure derived, as well as by the act of assembly, his whole claim against the funds in the hands of the garnishee, may be defeated by the entry of bail to the action.   Bail may be entered by the garnishee at any time before satisfaction acknowledged, or even by a fourth person, who may be interested as assignee of the debt owing by the garnishee to the defendant in the attachment. Loud., 260, 277 ; 1 Com. Dig. 584; Serg. on Attach. 131. The foreign attachment has no other end but to compel the appearance of the defendant to the original action.   Ib.   This object is plainly set forth in the Act of 1705.   The preamble states that the defect in the laws was, that "the effects of persons *absenting* are not *equally* liable with those of persons *dwelling upon the spot*, to make restitution for debts."   Act of 1705.   There is another difference between the claim of a plaintiff in a foreign attachment, and the demand of an ordinary judgment-creditor.   In the latter case, the plaintiff's debt, being conclusively established, he is entitled to execution without any condition.   In the former, he is not entitled to proceed on his execution, without entering into recognisance to restore the money levied, if his debt should be disproved within a year and a day next following.   There is still another difference; it is sometimes said that the attaching creditor stands in the shoes of his debtor, in all proceedings against the garnishee.   But the inaccuracy of this expression is fully shown by the case before us.   As Warwick, the defendant in the attachment, has testified, that the moneys deposited in the bank belonged to persons for whom he was agent, and were placed there in the course of his business as such agent, it is not probable that he could have drawn them out against the will of his principals.   The intermingling of the moneys of different principals, and placing the whole in deposit to his own credit, in his own name, would seem to form but slender grounds for claiming title to it against the rightful owners; such an act of confusion of moneys might change the title under the rules of the civil law, and leave the owners no remedy but a claim of damages for the wrong.   But the common law does not look with such favor upon such acts of intermingling wilfully, without the consent of the owners, and gives the whole to those whose property was thus originally invaded, and its distinct character destroyed.   Popham's R. 38, pl. 2; 2 Kent's Com. 364.   In addition to this, Warwick had no money in the hands of the garnishee, neither at the time of the attachment served, nor at the issuing of the *scire facias*, nor at the rendition of the judgment against the defendant, nor at the time

[*Jackson's Appeal.*]

of recovering judgment against the garnishee, nor at the time of the assignment in trust for the depositors; but the funds had been deposited in bank long after the issuing of the attachment, and had been paid out to Warwick long before the judgment was obtained against the garnishee; it is therefore manifest, that if the attaching creditor had no other shoes to stand in than those furnished by Warwick, his feet would be as free from covering as his present pretensions are destitute of equity. There are other differences between the rights of the defendant in the attachment, and those of the attaching creditor, but enough has been said to show that they are not by any means identical.

Had Warwick's deposits remained with the bank at the time of the assignment for the benefit of depositors, on the 7th June, 1841, he might have claimed dividends of the trust-funds, from time to time, as they were declared, without execution and without a recognisance to refund, in case his debt should be disproved; but we do not perceive how the trustees under that assignment could pay dividends to the attaching creditor, while his claim continues subject to the contingencies already indicated. He may not be a creditor at all. He is certainly not " a person to whom the bank was indebted as a depositor," at the time it executed the assignment, for the purpose of securing creditors of that class. As equity delights in equality, the law is not to be strained to secure to any creditor a preference over others. If the appellant claims as a depositor in his own right, it is clear that he has no shadow of foundation for his claim. If he claims a right to subrogation to the equities of Warwick, it is equally clear that his claim is invalid, for Warwick has already received the money. If he claims upon the ground that he was within the spirit and meaning of the preferences created in favor of depositors, his claim is at variance with the whole purpose which the bank held in view in making the assignment. By making the deposits in the bank, Warwick created the relation of debtor and creditor. This was a legal liability, which was the subject of attachment. By recovering the judgment against the garnishee, the plaintiff in the attachment secured all the legal advantages of that demand. But there were other relations, created by the deposit, which belong to the forum of honor, with which the plaintiff in the attachment has nothing to do, because obligations resting only in a sense of honor, are not the subject of attachment, levy or sale on execution. It was perfectly natural and proper that the bank, when in failing circumstances, should desire to secure those who had entrusted their money to its safe-keeping, in confidence in its ability and integrity. Deposits thus made had peculiar claims to favorable consideration. The bank derived large profits from them, while

[Murphy v. Flood.]

the depositors themselves received no interest or other compensation whatever. But in the case before us, all the obligations of honor created by the trust reposed, had been discharged before the assignment. The bank had returned to Warwick an amount equal to that which it had received from him. This payment, under the peculiar circumstances of the case, did not avail as a defence against the attachment. But it is a perfect acquittance in the estimation of every man who views the transaction as a question of mere honorable obligation. The plaintiff in the attachment has recovered a judgment by which the bank, if of sufficient ability, is bound to pay this debt a second time. But to say that it intended to give the plaintiff a preference over other creditors, is to impute to the bank a condition of indifference to the most ordinary sense of justice, which cannot be supposed to exist anywhere.

It is our opinion, that the plaintiffs in the attachment were not "persons to whom the bank was indebted as depositors," and that they are not entitled to come in as preferred creditors, upon the funds set apart for that class.

The appeal is therefore dismissed at the costs of the appellant.